IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENDRA KINGSBURY,<br><br>Defendant. | Case No. 21-cr-101-SRB |

## DEFENDANT'S SENTENCING MEMORANDUM

Kendra Kingsbury is to be sentenced for having classified materials at her home while she was an FBI intelligence analyst. She self-disclosed the presence of the materials in December 2017 and submitted to multiple interviews with investigators. Ultimately, she was indicted in May 2021 and pled guilty in October 2022. This is a serious offense, but the timeline of the case and other factors render imprisonment unnecessary here. Instead, the Court should impose a probated sentence after considering how Ms. Kingsbury's history and characteristics contributed to this situation.

### I. Ms. Kingsbury suffered from extensive health issues and family tragedies throughout her tenure with the FBI. Those events intersect with and provide the backdrop for this offense.

In December 2017, Ms. Kingsbury, with no outside prompting, self-disclosed to her employer, the FBI, that she had classified materials in her home. She consented to searches of her home and storage room to locate the classified materials. She consented to the removal of those materials. And she consented to multiple interviews with investigators to discuss why she had the materials away from a secured location. Ultimately, she accepted responsibility and pled guilty to two felony offenses for having classified materials at an unauthorized location.

Ms. Kingsbury began working for the FBI in 2004. Shortly after starting, she began to have serious medical issues that would continue to parallel the offense conduct. In connection with her pregnancy with her son, Ms. Kingsbury experienced severe sickness, including bloody stools.

Throughout 2007 and 2009, Ms. Kingsbury visited various gastrointestinal specialists, enduring testing, medications, and hospitalizations. The next year, 2010, she underwent reduction mammaplasty. Then, in 2011, she underwent a full colectomy and rectum removal. Through 2013 and 2014, she had further J-pouch surgeries. In 2016, she had skin cancer, requiring multiple surgeries.

If her own extensive medical issues were not enough to endure during this time, she also experienced several traumatic family events. Her stepbrother died in

2

September 2006, followed by her stepfather in November 2011. An uncle was murdered in south Texas in June 2015. And her mother suffered a heart attack and heart surgery in June 2016. Then, in September 2016, her father passed unexpectedly while away from home. Finally, in June 2017, her father-in-law passed away, punctuating years of loss in Ms. Kingsbury's family.

These things not only resulted in physical and mental struggles for Ms. Kingsbury, but also caused her difficulties with her work. Through it all, she was forced to miss work, but still required to keep up with her job responsibilities. The persistent medical and familial struggles that Ms. Kingsbury endured throughout her tenure with the FBI are key to understanding why this offense occurred.

> **II. Society has meted its own punishment on Ms. Kingsbury through public shame. Ms. Kingsbury faces considerable personal and employment difficulties being a convicted felon and disgraced former FBI employee. In that light, a sentence of probation satisfies the statutory sentencing factors.**

As discussed above, Ms. Kingsbury self-disclosed the presence of the classified materials in her home in December 2017. She cooperated with the investigation to assist in recovering additional mishandled classified materials. And she submitted to interviews about her misconduct.

After she was indicted for this offense in May 2021, she pled guilty in October 2022, further accepting responsibility for her actions. Lacking any criminal history whatsoever, Ms. Kingsbury has been successful on pre-trial release. She has incurred

3

no violations during the two-year pendency of the case—just as she had no issues between her self-disclosure in December 2017 until she was indicted.

While the nature of the offense is serious and there is arguably a need for the sentence to deter criminal conduct by others,[1] the protracted timeline of events suggests that a custody sentence would be greater than necessary here. And the balance of the statutory sentencing factors supports the appropriateness of a probated sentence.

As discussed above, Ms. Kingsbury has no criminal history. She has demonstrated, through years of pre-trial release, that court supervision provides adequate deterrence to criminal conduct and protects the public from potential recidivism.[2] Even before coming under the Court's supervision, though, she self-reported this offense and cooperated with the investigation. She has had no criminal issues in the more than five years since that initial self-report. Finally, this offense is unquestionably *sui generis*. It can only possibly be committed by those who have a security clearance and accompanying database access. Ms. Kingsbury now lacks both.

Given Ms. Kingsbury's personal history and characteristics, the public scrutiny and fallout from her self-disclosure demonstrate that she has already suffered much punishment for this offense. And probation itself is also punishment. The Supreme

---

[1] *See* 18 U.S.C. §§ 3553(a)(2)(A) & (B).

[2] *See* 18 U.S.C. § 3553(a)(2)(C).

Court has recognized that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."[3] In addition to the civil rights she has lost because of the conviction, she also lost her security clearance and has been terminated by the FBI. Her situation has been publicized locally and nationally—garnering mention alongside prominent political figures whose conduct appears uncannily analogous to Ms. Kingsbury's.

As a result of the conviction (and possibly her notoriety), Ms. Kingsbury has had difficulty finding and keeping employment. Still, she has persevered and found promising positions since her termination from the FBI. Her past experience, though, suggests that employment difficulties are likely to continue into the future, an unquantifiable punishment for her actions.

Ms. Kingsbury's other personal history also supports the imposition of a probated sentence. In 2019, Ms. Kingsbury and her husband divorced after 23 years of marriage. Ms. Kingsbury has two children, the youngest of which still lives with her. She and her youngest son now live with Ms. Kingsbury's 75-year-old mother. As an important caretaker of her family and now a single mother to a son soon to graduate from high school, a sentence of imprisonment, of whatever length, would have untold ramifications for those who rely on Ms. Kingsbury.

---

[3] *Gall v. United States*, 552 U.S. 38, 48 (2007); *United States v. Knights,* 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874 (1987)).

5

Case 4:21-cr-00101-SRB   Document 39   Filed 06/12/23   Page 5 of 7

The potential impact on Ms. Kingsbury's health is also noteworthy.[4] As discussed above, she labored through many serious medical issues throughout her employment with the FBI. Since her termination, additional medical issues have arisen. In February 2020, she was hospitalized with complications related to diabetes. Then, in August 2020, she underwent bladder sling surgery. She is on the verge of requiring an insulin pump.

A sentence of probation accounts for the statutory sentencing factors by providing just punishment, affording adequate deterrence, and protecting the public from recidivism.[5] While a sentence of imprisonment might arguably deter others from committing a similar offense, that notion is problematically speculative. Instead, the Court should consider the non-judicial punishment meted out on Ms. Kingsbury in the forms described above and find that a probated sentence properly balances the nature and seriousness of the offense with her personal characteristics and the goals of sentencing generally.

---

[4] *See* 18 U.S.C. § 3553(a)(2)(D).

[5] *See* 18 U.S.C. § 3553(a)(2).

### III. Conclusion

Ms. Kingsbury respectfully requests that the Court sentence her to probation. That is the reasonable sentence considering the statutory sentencing factors.

Respectfully submitted,

 /s/ MARC ERMINE
Assistant Federal Public Defender
1000 Walnut, Suite 600
Kansas City, Missouri 64106
(816) 471-8282

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants in this case.

 /s/ MARC ERMINE